United States District Court
District of Massachusetts

```
_____
                               )
CARYL HULL LEAVITT, individually)
and on behalf of all others     )
similarly situated,             )
                                )
          Plaintiff,            )
                                )
          v.                    )     Civil Action No.
                                )     18-12433-NMG
ALNYLAM PHARMACEUTICALS, INC.,  )
JOHN M. MARAGANORE and MANMEET  )
S. SONI,                        )
                                )
          Defendants.           )
                                )
TUNC TOKER, FREDERICK EDWARDS   )
and CHARLES IAPPINI,            )
                                )
          Movants.              )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This putative securities fraud class action is brought by Caryl Hull Leavitt ("Leavitt") on behalf of herself and other similarly situated investors against Alnylam Pharmaceuticals, Inc., its Chief Executive Officer and its Chief Financial Officer (collectively "Alnylam", "the Company" or "defendants"). Leavitt alleges that defendants made false and/or misleading statements regarding the efficacy and marketability of its therapeutic injection for the treatment of hereditary ATTR amyloidosis during the class period.

-1-

Leavitt bring this putative class action pursuant to the Private Securities Litigation Reform Act ("the PSLRA"), 15 U.S.C. § 78u-4.  That statute establishes a specific procedure for the appointment and approval of lead plaintiff and lead counsel in a private securities class action.  See § 78u-4(a)(3).  Pending before this Court are the competing motions of Leavitt, Tunc Toker ("Toker"), Frederick Edwards ("Edwards") and Charles Iappini ("Iappini") to be appointed as lead plaintiff and to have their respective counsel approved as lead counsel.  For the following reasons, Toker will be appointed as lead plaintiff and his selected lead counsel and liaison counsel will be approved.

## I.   **Background**

### A.   **The Facts**

Alnylam is a biopharmaceutical company incorporated in Delaware with its principal place of business in Cambridge, Massachusetts.  The Company develops and commercializes treatments for hereditary ATTR amyloidosis which is a gene mutation that causes the build-up of certain proteins in the body's nerves and organs.  That build-up can harm the functioning of nerves and organs.  The Company developed its therapeutics based on RNA interference ("RNAi") which inhibits the formation of those disease-causing proteins.  In December, 2017, Alnylam submitted to the FDA a new drug application and a

marketing authorization application for Onpattro (patisiran) which is administered by intravenous injection.

Alnylam's stock trades on the NASDAQ Stock Market.  The Complaint alleges that between February 15, 2018, and September 12, 2018 ("the Class Period"), defendants made false and/or misleading statements and/or failed to disclose that: 1) "Alnylam overstated the efficacy and safety of its Onpattro (patisiran) lipid complex injection" and 2) "as a result, Alnylam's public statements were materially false and misleading at all relevant times".

In August, 2018, Onpattro was approved by the FDA.  On September 12, 2018, an analyst from an institutional broker, Nomura/Instinet, reported that a document released by the FDA's Center for Drug Evaluation and Research revealed a greater risk with respect to certain trials of Onpattro and a more limited market opportunity for the drug than previously contemplated. Specifically, the analyst indicated that the document showed the FDA's concerns over cardiac deaths in patients treated with Onpattro and suggested that the drug be limited to the treatment of patients with polyneuropathy.  Finally, the analyst stated that some comments in the document call into question the accuracy of certain claims made by Alnylam.

After that report was published, Alnylam's stock price fell by over 5%, from $100.35 to $94.75 per share.  The Complaint

alleges that as a result of that decline in market value,
investors who purchased Alnylam stock during the Class Period in
reliance on defendants' false and/or misleading statements
suffered significant losses.

   **B.   Procedural History**

   In September, 2018, Leavitt filed this Complaint in the
United States District Court for the Southern District of New
York.  Shortly thereafter, notice of this putative securities
fraud class action was published pursuant to the PSLRA on
GlobeNewswire, a global business-oriented press release
distribution service with substantial operations in North
America. 15 U.S.C. § 78u-4(a)(3)(A)(i).  In late November, 2018,
the case was transferred to this Court.  A few days later,
putative class members Toker, Leavitt, Edwards and Iappini filed
their respective motions to be appointed lead plaintiff pursuant
to the PSLRA. Id.

   In December, 2018, Toker and Edwards filed oppositions to
the motions of the other putative class members.  Iappini filed
a notice in support of Toker as presumptively the most adequate
plaintiff under the PSLRA and in opposition to Edwards's motion
for appointment as lead plaintiff.  Leavitt filed no opposition
to the motions of the other putative class members, thereby
ostensibly conceding that she is not presumptively the most
adequate plaintiff under the PSLRA.  The Court therefore

-4-

analyzes only whether Toker or Edwards should be appointed as lead plaintiff in this matter.

II. **Motion to Appoint Lead Plaintiff Under the PSLRA**

    A. **Legal Standard**

Under the PSLRA, the Court must appoint as lead plaintiff the purported class member or class members that it determines "to be most capable of adequately representing the interests of [the class]". 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA establishes a rebuttable presumption for determining which purported class member is the so-called "most adequate plaintiff". § 78u-4(a)(3)(B)(iii).  The Court shall adopt the presumption that an individual is the most adequate plaintiff where he or she 1) "has either filed the complaint or made a motion in response to a notice under [the statute]", 2) "in the determination of the court, has the largest financial interest in the relief sought by the class" and 3) "otherwise satisfies the requirements of [Fed. R. Civ. P. 23]". § 78u-4(a)(3)(B)(iii)(I).  Once established, that presumption may be rebutted only upon proof by another class member that the originally chosen plaintiff 1) "will not fairly and adequately protect the interests of the class" or 2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class". § 78u-4(a)(3)(B)(iii)(II).

Although the PSLRA does not prescribe how to determine which putative class member has the largest financial interest, courts in this district and others have considered the following factors in making that determination: 1) "the number of shares purchased during the class period"; 2) "the number of net shares purchased during the class period"; 3) "the total net funds expended during the class period"; and 4) "the approximate losses suffered during the class period". Ark. Teacher Ret. Sys. v. Insulet Corp., 177 F. Supp. 3d 618, 622 (D. Mass. 2016) (citing In re Olsen Corp. Sec. Litig., 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)).  Courts consider the approximate losses allegedly suffered to be the most important factor in determining the largest financial interest. Id.

So-called "in-and-out transactions" (those securities both bought and sold within the class period) are excluded from the calculation of approximate losses because any losses from those transactions lack a causal link to the allegedly false or misleading statements or omissions. Topping v. Deloitte Touche Tohmatsu CPA, Ltd., No. 14 Civ. 2814(ER), 2015 WL 1499657, at *6-7 (S.D.N.Y. Mar. 27, 2015) ("[W]hen calculating movants' financial interests on a lead plaintiff motion, courts should not include losses result[ing] from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the

public." (internal quotation marks omitted) (alteration in original)); see also Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 342, 346-47 (2005) (holding that the payment of an inflated purchase price is insufficient to establish the necessary causation between the alleged misconduct and the relevant economic loss but rather the purchaser generally must show that the stock price fell significantly after the truth became known).

To establish that a purported class member otherwise satisfies the requirements of Fed. R. Civ. P. 23 for purposes of a lead plaintiff motion, the movant need only make a prima facie showing that he or she satisfies the typicality and adequacy requirements. Ark. Teacher Ret. Sys., 177 F. Supp. 3d at 622. A plaintiff's claim is typical if it arises from the "same events or course of conduct" and involves the same legal theory as the claims of the rest of the class members. In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 46 (D. Mass. 2001). A plaintiff is adequate if 1) he or she has common interests and an absence of conflict with the other class members and 2) his or her attorneys are qualified, experienced and able vigorously to conduct the litigation. Id.

Once the court has determined the most adequate plaintiff, that individual must retain counsel to represent the class, subject to the approval of the court. 15 U.S.C. § 78u-

4(a)(3)(B)(v).  While the court need not simply rubberstamp the plaintiff's choice of class counsel, the plaintiff's choice should be given some weight especially where counsel is experienced in securities fraud class actions and able to litigate the matter effectively. See In re Lernout, 138 F. Supp. 2d at 46-47.

### B.   Application

The presumptively most adequate plaintiff will be determined here by reference to the established statutory criteria.

#### 1.   Timely Motion

The motions of both Toker and Edwards are timely.  A notice of the lawsuit was published on GlobeNewswire on September 26, 2018.  Toker and Edwards filed their respective lead plaintiff motions 60 days later on November 26, 2018. See § 78u-4(a)(3)(A)(i)(II) (providing that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class").  They therefore both satisfy the first prong of the rebuttable presumption.

#### 2.   Largest Financial Interest

The primary dispute is whether Toker or Edwards has the largest financial interest in the relief sought by the class. Edwards alleges that he suffered losses of over $113,500 while

-8-

Toker claims that he suffered losses of about $89,700.[1]  Toker contends, however, that Edwards has substantially overstated his losses by including in-and-out transactions.  Toker submits that, based on his own calculations using various accounting methods, Edwards has suffered, at most, $51,000 in losses and as little as $25,100.  In support of Toker's motion to be named lead plaintiff, Iappini confirms Toker's analysis and maintains that Edwards's losses are no more than $49,300, less than half of what he initially claimed.

After reviewing the financial figures and calculations of both Toker and Edwards, the Court finds that Edwards has indeed overstated his losses.  In his calculation, Edwards includes the sales of many securities that were consummated before the relevant disclosure date of September 12, 2018, and thus are not causally linked to the alleged misconduct.  Notably, Edwards does not contest any of the figures submitted by Toker or Iappini with respect to his recoverable losses.  On the other hand, all the relevant sales of Toker's stock occurred after the disclosure date and thus the amount of approximate recoverable losses he declares ($89,700) appears to be accurate.  Even the largest amount of Edwards's losses (as attributed by Toker) is less than the apparent losses suffered by Toker.  Toker

---

[1] Iappini asserts that his losses were about $40,500 and Leavitt claims to have lost only about $2,300.

therefore has the largest financial interest in the relief sought by the class.

Aside from having incurred the greatest approximate losses, Toker also appears to have the largest financial interest based upon the other three factors to be considered. Toker asserts that he purchased 7,400 shares of Alnylam stock during the Class Period while Edwards allegedly bought 3,443 shares. Furthermore, Toker contends that he bought 7,400 shares more than he sold during the Class Period while Edwards was actually a net seller of 168 shares during that time frame. Finally, Toker submits that he paid $761,700 more for stock than he realized from the sale of such stock during the Class Period while Edwards's differential during the same time frame was only $3,100. Again, Edwards does not contest any of Toker's calculations. The Court therefore finds that Toker has the largest financial interest in the relief sought under the relevant factors.

### 3.   Requirements of Fed. R. Civ. P. 23

Toker otherwise satisfies the requirements of Fed. R. Civ. P. 23.

First, his claims are typical of those of the other class members because he has suffered the same injuries as a result of the same course of conduct by defendants. Moreover, his claims are based on the same legal theory as those of the other class

members because he 1) purchased shares of Alnylam stock 2) in reliance upon 3) allegedly false and/or misleading statements and/or omissions 4) knowingly made by defendants and 5) thereafter suffered economic losses 6) when the truth became public and Alnylam's stock price dropped precipitously.

Second, Toker is an adequate lead plaintiff because 1) he and the other class members have the same interest in maximizing the recovery from defendants for the alleged fraud, 2) he has a substantial financial stake in the litigation that will ensure his vigorous prosecution of the claims and 3) he has chosen qualified and experienced counsel.

Toker is therefore presumptively the most adequate plaintiff and will be appointed as lead plaintiff unless one of the other movants timely demonstrates that he is inadequate.

### 4.   Rebuttal Evidence

Edwards has not attempted to show that Toker is either unable to protect, fairly and adequately, the interests of the class or is subject to unique defenses that render him incapable of adequately representing the class.  Furthermore, Iappini has conceded that Toker is the most adequate plaintiff and Leavitt has submitted no opposition to Toker's appointment as lead plaintiff in this case.  The Court independently finds that Toker can fairly and adequately represent the interests of the class for the reasons already stated.

-11-

Toker will therefore be appointed as lead plaintiff and the competing motions will be denied.

### 5.   Selection of Lead Counsel and Liaison Counsel

The Court approves Toker's selection of Berstein Liebhard as lead counsel and Berman Tabacco as liaison counsel for the purported class.  Both firms appear to have extensive experience in the area of securities class actions and have secured favorable dispositions for their respective clients.  There is no apparent reason why both firms cannot adequately represent the class together, particularly if Berman Tabacco is serving in a largely administrative role and an arrangement is made to avoid the incurrence of duplicate fees. See Soto v. Hensler, 235 F. Supp. 3d 607, 624 (D. Del. 2017).  Moreover, none of the other movants opposes Toker's choice of counsel.

Accordingly, Toker's motion to approve his selection of lead counsel and liaison counsel will be allowed.

### ORDER

For the foregoing reasons,

1) the motion to appoint Tunc Toker as lead plaintiff and to approve his selection of lead counsel and liaison counsel (Docket No. 17) is **ALLOWED**;

2) the motion to appoint Caryl Hull Leavitt as lead plaintiff and to approve her selection of lead counsel and liaison counsel (Docket No. 20) is **DENIED**;

3) the motion to appoint Frederick Edwards as lead plaintiff
   and to approve his selection of lead counsel (Docket No.
   23) is **DENIED;** and

4) the motion to appoint Charles Iappini as lead plaintiff
   and to approve his selection of lead counsel (Docket No.
   24) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 8, 2019